SUMMER v. SHANAHAN.

ACCOUNTING—PURCHASE PRICE OF FARM—EVIDENCE—APPEAL AND ERROR.

> Evidence in suit brought by blind man for accounting as to purchase price of farm *held*, to justify finding of court that he was to receive $4,000 less mortgage and sums necessary to quiet title and to warrant decree for balance of $1,600.

Appeal from Lapeer; Smith (Henry H.), J. Submitted April 19, 1934. (Docket No. 39, Calendar No. 37,700.) Decided June 4, 1934.

Bill by Anthony Summer against Michael P. Shanahan and Theresa Bruman for an accounting and for other relief. From decree for plaintiff against defendant Shanahan, he appeals. Affirmed.

*Ralph M. Tate* (*Walter E. Martin,* of counsel), for plaintiff.

*Walsh, Walsh & O'Sullivan* (*Sullivan & Sullivan,* of counsel), for defendant Shanahan.

NELSON SHARPE, C. J. The plaintiff and his wife lived on a 40-acre farm in the county of Lapeer for many years. She passed away in 1927, and he went to live in the home of his niece, Theresa Bruman, and her husband in the village of Memphis. He was then, and had for many years been, totally blind. Mr. Bruman was at that time in the employ of the defendant Shanahan, who was engaged in the gravel business. Bruman and his wife knew that there was a gravel pit on plaintiff's farm, from which gravel

had been sold, and called Shanahan's attention to it. Litigation was at that time pending over plaintiff's title to the farm. It was finally conveyed by plaintiff to Shanahan, and this suit was brought against him and Mrs. Bruman for an accounting of the moneys due him on the purchase price thereof.

The plaintiff testified that Shanahan, in the presence of Mr. and Mrs. Bruman, expressed a desire to purchase his farm, and that he said to him, "now you are in such a fix  *  *  *  How much would you take for the place now?" that he first asked $15,000, but Shanahan said it was too much, and offered him $4,000, and he finally agreed to take it; that he was taken to Port Huron and a contract was prepared and read to him, under which he was to receive the $4,000 for the farm, and that, as he understood it, the contract was delivered to Mrs. Bruman for him. He also testified that some time later Henry Brown, the then cashier of a bank in Lapeer, who was deceased at the time of the trial, brought a deed to his niece's home, and that he signed it on the assurance that he would get the $4,000.

The defendant Shanahan testified that, after talking with the plaintiff and Mr. and Mrs. Bruman about purchasing the farm, he said to them that he would have to consult with his attorneys about it; that his attorneys advised him that he must have "some sort of a tentative agreement" as he would be required to pay out money to clear up the title; that such an agreement was prepared and executed, in which he agreed to pay plaintiff the sum of $1,200 for a quitclaim deed. On being asked, "Any $4,000 connected with it?" he answered:

"There was. There was a 4,000, something about $4,000 in this tentative agreement, with a

great many reservations in connection that he must do so and thus in furnishing the title, and the property must be as valuable, must be as valuable as supposed.''

William W. Reynolds, who was later acting for Mr. Shanahan in the procuring of the quitclaim deed, also testified that he knew the preliminary agreement called for the payment of $4,000 for the farm. Shanahan was several times asked to produce this agreement. He at one time said he did not know where it was, and later that he thought he destroyed it himself.

After this agreement was executed, Shanahan took charge of the litigation relative to the title, and plaintiff's rights therein were established. There is evidence that the plaintiff understood he was to get but $1,200 for the farm at the time he signed the deed. A writing was then signed by Mrs. Bruman and Shanahan and left with the bank, stating that Shanahan had issued two checks for $600; the one to be delivered to Mrs. Bruman for services rendered to the plaintiff, and the other to be deposited to plaintiff's credit in the bank ''for the purpose of his future maintenance and no disbursements of this fund can be made for a period say of 60 days or until some satisfactory arrangements may be made for his future welfare.'' It is significant that on the face of the two checks drawn in payment of the $1,200 appear the words, ''forty acres part payment.''

Soon thereafter plaintiff was taken by Mrs. Bruman to the ''Little Sisters of the Poor'' at Detroit, where he stayed for more than two years, and he then was taken to the Wayne County Infirmary at Eloise, and remained there until the time of the trial.

Mrs. Bruman, called as a witness for the defendant, testified that she was present when the plaintiff executed the quitclaim deed by putting his mark thereon. She was then asked:

"Do you remember at the time that you and Mr. Reynolds and your husband were in Shanahan's office that there was an offer made of $1,200 on this property?" and answered: "I think so. I think so, yes. I remember just about the $1,200," and that she talked it over with plaintiff and he expressed his willingness to accept it. She further testified:

"*Q.* Now, Mrs. Bruman, how much money in cash that you know of has Anthony Summer received from the farm?

"*A.* Well, there was the $600 in the bank.

"*Q.* How much has he received in cash that he could call his own, that wasn't tied up?

"*A.* Why, none that I know of."

The trial court found that an agreement was made under which plaintiff was to receive $4,000 for the land. He deducted therefrom the amount of the checks, the amount of the mortgage on the land, and the expenses of the litigation paid by the defendant Shanahan, amounting in all to $2,400, and entered a decree in plaintiff's favor against him for $1,600, from which he has appealed. The bill was dismissed as to Mrs. Bruman.

We have here a man totally blind and living with his niece, whose husband was in the employ of the defendant Shanahan. The evidence justified the finding of the trial court that in the agreement first made the plaintiff was to receive $4,000 for his farm, less the amount of the mortgage and the sums expended to perfect his title thereto. He executed a quitclaim deed therefor, for which he has received no money and no benefit except some clothing given him by his niece.

Ordinary prudence on the part of Mr. Shanahan in dealing with this man should have suggested that his interests should be properly protected. Had the agreement first entered into been produced, the rights of the parties would doubtless have been determined thereby. Under the facts here presented, the trial court was warranted in finding that the purchase price was agreed upon therein at $4,000, less the sums disbursed by Shanahan in quieting the title and the amount of the mortgage, and we agree with him that the after proceedings, under the circumstances, should not be held to relieve him from making payment of the balance due the plaintiff thereon.

The decree is affirmed, with costs to plaintiff.

POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred. BUSHNELL, J., did not sit.